UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY DICKEY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>D. STRAYHORN and D. PARAMO,<br><br>　　　　　　　　　　Defendants. | Case No.: 17-cv-00546 JLS (JLB)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF No. 22]** |

This matter is before the Court on Defendant D. Paramo's Motion to Dismiss Plaintiff Gary Dickey's complaint brought under the Civil Rights Act, 42 U.S.C. § 1983. (ECF No. 22.) Plaintiff brings this action for injuries he suffered at Richard J. Donovan Correctional Facility ("RJDCF") when a correctional officer allegedly handcuffed Plaintiff, threw him to the ground, and then kicked Plaintiff in the face. (ECF No. 1 at 3–6.)[1] Plaintiff names as defendants the correctional officer who allegedly assaulted him, D. Strayhorn, and the warden at RJDCF, D. Paramo. (*Id.* at 2.) Warden Paramo moves to dismiss all claims against him, arguing that Plaintiff's complaint is devoid of any allegations against him and that he cannot be held vicariously liable for the acts of his subordinates. (ECF No. 22-1 at 1.)[2]

---

[1] All page citations in this Order refer to those automatically generated by the CM/ECF system.
[2] Defendant Strayhorn has not moved to dismiss the claims against him.

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.3 of the Local Rules of Practice for the United States District Court for the Southern District of California. After a thorough review of Plaintiff's complaint, the parties' motion and opposition papers, and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss (ECF No. 22), but grant Plaintiff leave to amend his complaint.

## I.  BACKGROUND

Plaintiff Gary Dickey, a state prisoner proceeding *pro se* and *in forma pauperis*, initiated the present action by filing a complaint in this Court on March 17, 2017. (ECF No. 1.) Plaintiff is a state prisoner confined at Salinas Valley State Prison ("SVSP"). Prior to arriving at SVSP, Plaintiff was confined at RJDCF.

Plaintiff's complaint alleges that the following occurred while he was confined at RJDCF: On February 3, 2017, Plaintiff was on his way to the medical clinic for blood work testing when Corrections Officer and Defendant D. Strayhorn tore up Plaintiff's pass allowing him to visit the clinic and told Plaintiff to leave. (ECF No. 1 at 3.) Plaintiff responded that he would instead wait on a bench until Strayhorn's supervisor arrived. (*Id.*) Plaintiff and Strayhorn proceeded to call each other names until Strayhorn rapidly approached Plaintiff and ordered him to turn around. (*Id.*) Plaintiff complied and Strayhorn handcuffed both of Plaintiff's wrists. (*Id.* at 4.) Plaintiff protested that the handcuffs were digging into his arm and causing him pain, to which Strayhorn responded, "good punk." (*Id.*) After Plaintiff told Strayhorn that he was "nothing but an Uncle Tom," Strayhorn "slammed me so hard on my face, that I almost passed out" and "[t]he left side of my forehead was pouring out blood." (*Id.*) While on the ground, Plaintiff called Strayhorn a "punk." (*Id.*) Strayhorn then stepped on Plaintiff's glasses and kicked Plaintiff in the face with his steel-toed boots, creating a wound above Plaintiff's right eye that would require three to four stitches. (*Id.*)

Plaintiff was left handcuffed and bleeding on the floor for about ten minutes. (*Id*. at 5.) Other correctional officers[3] then stood Plaintiff up, but he fell to his knees because he was dizzy. (*Id*.) The officers stood Plaintiff back up and "just stood there and watched me bleed." (*Id*.) Plaintiff was then taken to a holding cell where he was confined without medical attention for about an hour before he was seen by a nurse. (*Id*. at 5, 9.)[4]

A sergeant officer[5] told Plaintiff that Strayhorn said Plaintiff tried to hit him with his cane. (*Id*. at 5–6.) Plaintiff alleges that he could not have hit Strayhorn with his cane because both of his wrists were handcuffed. (*Id*.) Plaintiff alleges that Strayhorn is now trying to protect himself "because he knows what he did to me was use of exccessive [sic] force." (*Id*. at 6.) Plaintiff alleges that another correctional officer, Officer Renteria, told Strayhorn to fabricate the story that Plaintiff attacked Strayhorn with his cane and told the other five officers to confirm Strayhorn's account. (*Id*.) Plaintiff alleges that Renteria said this story would be believable because Plaintiff had hit an officer with his cane once before. (*Id*. at 11.)[6] Plaintiff alleges that Renteria stated that he "and his crew are professionals at what they do, as in lying on their reports to make them look like we attack them first." (*Id*.) Plaintiff further alleges that "Strayhorn and the people he work[s] with are known for handcuffing inmates up, then slamming them to the ground." (*Id*. at 7.) Specifically, Plaintiff alleges that Strayhorn and Renteria "have a bad habit of messing with EOP inmates." (*Id*. at 11.)

---

[3] Plaintiff does not identify these correctional officers by name or badge number. (*See id*. at 5.)

[4] Plaintiff alleges that he was in a holding cell for an hour before he was seen by a nurse and that "it took [Strayhorn] at least two hours to take me too [sic] the clinic too [sic] get stitches. . ." (*Id*. at 9.) It is not clear from the complaint whether Plaintiff alleges he was denied medical care for one to two hours while in a holding cell waiting for a nurse to see him, or if he was denied medical care for a total of three hours— an hour before the nurse initially saw Plaintiff and another two hours before he was taken to the medical clinic to get stitches. (*See id*.)

[5] Plaintiff does not identify the sergeant officer by name or badge number. (*See id*. at 5–6.)

[6] Plaintiff alleges that he previously had an altercation with Renteria in which Plaintiff admits that he hit Renteria with his cane. (*Id*. at 11.)

Plaintiff attaches to his complaint a medical report, dated February 3, 2017, that indicates Plaintiff was suffering from an abrasion, swelling, and pain; was actively bleeding; and had a cut, laceration, or slash. (*Id.* at 19.) The report states that Plaintiff indicated he "was handcuffed too tight, so when I turned around, I got slammed on the concrete." (*Id.*) Handwriting on the report states, "This is a lie, I told her that the [correctional officer] threw me to the ground then kick [sic] me in the forehead because I called him out of his name. [H]e tore my pass up, so he was in the wrong[.] I did not swing my cane at him . . . ." (*Id.*) (emphasis in original.)

The only allegation in the body of the complaint specifically addressed to Warden Paramo's liability is: "[Warden Paramo] lets these officers treat us any kind of way. They are known for slamming inmates to the ground when their [sic] cuffed up." (*Id.* at 2.) Attached to the complaint are two Form 22 Requests directed to Warden Paramo reporting the February 3, 2017 incident, one dated as being mailed on February 12, 2017 (*id.* at 15) and the other dated as being mailed on February 25, 2017 (*id.* at 16). Plaintiff states in the February 25, 2017 Form 22 Request: "You [Warden Paramo] know that the officers here are slamming people on the ground when we are cuffed up. Then they lie and say we attacked them first and thats [sic] why a few of your officers have complaints against them. And you are very aware of what your officers are doing too [sic] us. And you don't do nothing about it." (*Id.*)

In addition, the complaint contains certain allegations about the alleged misconduct of the officers being the subject of complaints and of being "known," without identifying who allegedly has this knowledge: "There is a whole lot of complaints against them for exccessive [sic] use of force" (*id.* at 6); "C/O Strayhorn and the people he work with are known for handcuffing inmates up, then slamming them to the ground" (*id.* at 7); "There are too many complaints on the C/Os here that involved them handcuffing inmates up, then the C/Os would slam us to the ground if we even cussed or really said anything that got them mad, like what happened to me" (*id.* at 8).

///

## II. LEGAL STANDARDS

Before the Court is Warden Paramo's Rule 12(b)(6) motion to dismiss all claims against him. (ECF No. 22.)

### A. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the claims in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007); *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n.1 (9th Cir. 1991).

*Ashcroft v. Iqbal* sets forth a "two-pronged approach" for evaluating the sufficiency of a complaint, whereby a court may first identify legal conclusions in the complaint not entitled to an assumption of truth, and then analyze the remaining well-pled factual allegations to determine whether the complaint states a plausible claim for relief. 556 U.S. 662, 678–79 (2009). Under the first prong, a court must accept as true all well-pled factual allegations contained in a complaint. *Id*. at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to an assumption of truth. *Id*. "[D]etailed factual allegations" are not required, but a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969 (quotations omitted).

### B. Standards Applicable to *Pro Se* Litigants in Civil Rights Actions

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*). Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (internal quotation omitted).

Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624–25 (9th Cir. 1988). Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. *Id.*; *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

///

## C. Supervisory Liability Under 42 U.S.C. § 1983

42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Under § 1983, a plaintiff must prove: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that there is no vicarious liability for constitutional violations under § 1983. *Iqbal*, 556 U.S. at 676–77. *See also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, "constitutional tort claims against supervisory defendants turn on the requirements of the particular claim—and, more specifically, on the state of mind required by the particular claim—not on a generally applicable concept of supervisory liability." *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012) (citing *Iqbal*, 556 U.S. at 676). Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels*, 474 U.S. at 330. Therefore, the state of mind required to establish individual liability will vary with the constitutional right at issue. *Iqbal*, 556 U.S. at 676; *OSU Student All.*, 699 F.3d at 1071.

Section 1983 also has a causation requirement. Liability only "extends to those state officials who 'subject, or cause to be subjected,' an individual to a deprivation of his federal rights." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (internal alterations omitted). A supervisor may only be held liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652

7

17-cv-00546 JLS (JLB)

F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989)). *See also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). To demonstrate a sufficient causal connection, a plaintiff must "show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Starr*, 652 F.3d at 1207 (citing *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)). In deliberate indifference cases, this causal connection can be established by setting in motion a series of acts by others leading to the injury, or by "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. (quoting *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).

### III. ANALYSIS

Warden Paramo argues that all claims against him should be dismissed because there is no vicarious liability under § 1983 and the complaint is devoid of any allegations against him personally. (ECF No. 22-1 at 3–4.)[7] Plaintiff argues that his claims should not be dismissed because it is common practice for officers at RJDCF to handcuff mentally ill inmates and "slam us to the ground." (ECF No. 27 at 3.) As to Warden Paramo, Plaintiff asserts, "Defendant Paramo is responsible for his officers['] conduct and its [sic] his job to look into" complaints against officers. (*Id*. at 4.) Plaintiff further argues that Warden Paramo has liability because he "failed to stop his officers from using unnecessary force" so he is "just [as] in the wrong as the staff who's under him." (*Id*.) For the reasons stated below, the Court finds that the complaint fails to allege sufficient facts to state a claim against Warden Paramo.

As a *pro se* plaintiff in a civil rights case, the Court has a duty "to construe the pleadings liberally and to afford [Plaintiff] the benefit of any doubt." *Hebbe*, 627 F.3d at 342 (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)). The

---

[7] Warden Paramo does not argue that he is entitled to qualified immunity. (*See* ECF No. 22-1.)

complaint alleges that Warden Paramo was aware of, but failed to respond to, complaints by inmates that officers at RJDCF were violently mistreating inmates. (ECF No. 1 at 2.) Plaintiff alleges that Warden Paramo "lets these officers treat us any kind of way. They are known for slamming inmates to the ground when their [sic] cuffed up." (*Id*.) The gravamen of Plaintiff's allegations against Warden Paramo is an Eighth Amendment prison conditions claim that Paramo was deliberately indifferent to Plaintiff's safety.[8]

A prison official violates the Eight Amendment's Cruel and Unusual Punishment Clause when (1) the deprivation of a right is "objectively, sufficiently serious," and (2) the prison official has a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). Deliberate indifference is a subjective standard. *Id*. at 837. A supervisor cannot be held liable "for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. However, prison officials are not free to ignore obvious dangers to inmates; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

---

[8] Plaintiff also alleges that he was denied medical care for somewhere between one and three hours while actively bleeding. (ECF No. 1 at 5, 9.) To the extent that Plaintiff alleges an Eighth Amendment deliberate indifference claim for the delay of medical care, Plaintiff fails to state a claim as he does not allege that the delay led to any further injury or harm. *See Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)); *Shapley v. Nevada Board of State Prison Commr's*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (mere delay of medical care is insufficient to state a claim of medical indifference unless the delay causes harm). Even if Plaintiff had sufficiently alleged an Eighth Amendment deliberate indifference claim with respect to delay in medical care, he has not sufficiently alleged liability as to Warden Paramo for the same reasons set forth herein with respect to his excessive force claim.

9

"[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207. *See also OSU Student All.*, 699 F.3d at 1071 (a supervisor "is liable for prisoner abuse perpetrated by his subordinates if he knowingly turns a blind eye to the abuse"). A supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury' " to be held liable, so long as "culpable action, or inaction, is directly attributable to [the supervisor]." *Starr*, 652 F.3d at 1205 (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991)).

Certain of Plaintiff's allegations suggest that he seeks to state a claim against Warden Paramo based on a theory of vicarious liability. (*See* ECF No. 1 at 4 ("Defendant Paramo is responsible for his officers[´] conduct"; he is "just [as] in the wrong as the staff who's under him.").) Reliance on such a theory of liability is misplaced. As correctly pointed out by Defendant, liability under Section 1983 is based only on the defendant's individual actions and may not attach under a theory of vicarious liability. *See Starr*, 652 F.3d at 1205–07; *Iqbal*, 556 U.S. at 676–77.

To the extent Plaintiff endeavors to allege deliberate indifference against Warden Paramo as a result of his own action or inaction, he has failed. Plaintiff does not allege that Warden Paramo was personally involved in the alleged February 3, 2017 incident. Thus, Plaintiff must instead demonstrate that (1) there is a "sufficient causal connection" between Warden Paramo's alleged wrongful conduct and a constitutional violation committed by his subordinates, and (2) Warden Paramo was deliberately indifferent to Plaintiff's safety. *See Starr*, 652 F.3d at 1205–07; *Farmer*, 556 U.S. at 837. For the reasons stated below, the complaint fails to allege facts plausibly suggesting this was the case.

The body of the complaint alleges the following: Warden Paramo "lets these officers treat us any kind of way. They are known for slamming inmates to the ground when their [sic] cuffed up." (ECF No. 1 at 2). A Form 22 Request completed by Plaintiff and attached to the complaint alleges that Warden Paramo "know[s] that the officers here are slamming

people on the ground when we are cuffed up. Then they lie and say we attacked them first." (*Id.* at 16.) The form further states to Warden Paramo, "[Y]ou are very aware of what your officers are doing to us. And you don't do nothing about it." (*Id.*)

In addition, as pointed out above, Plaintiff makes certain claims as to prior complaints against the correctional officers and what is "known" about their conduct, without identifying to whom those complaints are made or who is purported to have knowledge of this conduct or how: "There is a whole lot of complaints against them for exccessive [sic] use of force" (*id.* at 6); "C/O Strayhorn and the people he work with are known for handcuffing inmates up, then slamming them to the ground" (*id.* at 7); "There are too many complaints on the C/Os here that involved them handcuffing inmates up, then the C/Os would slam us to the ground if we even cussed or really said anything that got them mad, like what happened to me" (*id.* at 8).

Plaintiff's allegations resemble the "bald" and "conclusory" allegations found to be inadequate in *Iqbal*, 556 U.S. at 680–81, and *Hydrick v. Hunter*, 669 F.3d 937, 941–42 (9th Cir. 2012), rather than the detailed factual allegations found to be sufficient in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). In *Iqbal*, the plaintiff alleged that defendants "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest"; one defendant was the "principal architect" of this invidious policy; and another defendant was "instrumental" in adopting and executing it. The Supreme Court held that these allegations were "bare assertions" amounting only to legal conclusions that were not entitled to an assumption of truth. *Id*. Similarly, in *Hydrick v. Hunter*, plaintiffs alleged that defendants' "policies, practices and customs subject [Plaintiffs] to unreasonable searches; searches as a form of punishment; degrading public strip searches; improper seizures of personal belongings; and the use of unreasonable force and physical restraints," in support of their Fourth Amendment claim, and further alleged in support of a First Amendment retaliation claim that "Defendants have personal knowledge of retaliation against [the Plaintiffs] for participation in lawsuits,

but Defendants' policies, practices and customs permit and encourage retaliation." *Hydrick*, 669 F.3d at 942. The Ninth Circuit held that these allegations were "bald" and "conclusory" because "there is no allegation of a *specific* policy implemented by the Defendants or a *specific* event or events instigated by the Defendants . . . ." *Id*. (emphasis in original). The Court stated—

> The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Even under a "deliberate indifference" theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates.

*Id*. (internal citations and quotation marks omitted).

In contrast, in *Starr v. Baca*, the Ninth Circuit held that the plaintiff properly pled sufficient facts to state a claim that Sheriff Baca, the supervisor of the jail where plaintiff was detained, was deliberately indifferent to the plaintiff's safety when the complaint contained detailed factual allegations about: (a) a letter Sheriff Baca received from the Department of Justice in 1997 discussing a pattern and practice of "abuse of inmates by sheriff's deputies working in the jail and inmate on inmate violence"; (b) weekly reports Sheriff Baca received "from his subordinates responsible for reporting deaths and injuries in the jails"; (c) a 1999 Memorandum of Understanding that Sheriff Baca and the County of Los Angeles entered into with the Department of Justice, where Sheriff Baca and the County agreed to "address and correct the continuous constitutional violations to which inmates were being subjected"; (d) a 2006 report by the Department of Justice which found "noncompliance with many of its recommendations regarding the abuse of inmates"; (e) an incident in 2002 where Sheriff Baca was informed of a physical attack on an inmate by a sheriff's deputy and the inmate's subsequent death, and no investigation was conducted; (f) the deaths of two inmates in 2003 as a result of lax oversight by sheriff's deputies; (g) the deaths of three inmates in 2004 as a result of lax oversight by sheriff's deputies; and (h) a 2005 incident where an inmate who was booked on a non-violent misdemeanor was

misclassified by sheriff's deputies, placed near "high risk" inmates, and beaten to death by fellow inmates. *Starr*, 652 F.3d at 1209–11.

Like the plaintiffs in *Iqbal* and *Hydrick*, Plaintiff's complaint contains only "bald" and "conclusory" allegations and fails to allege *specific* events or facts plausibly suggesting that Warden Paramo knew of unconstitutional conduct committed by his subordinates and acquiesced in that conduct. *See Iqbal*, 556 U.S. at 680–81; *Hydrick*, 669 F.3d at 942. Plaintiff alleges that it was generally known that Strayhorn and other officers had a practice of "slamming inmates to the ground when their [sic] cuffed up," but does not allege specific facts plausibly suggesting that this was a common practice or that Warden Paramo knew of this practice. (ECF No. 1 at 2.) Although Plaintiff alleges that there are numerous complaints against Strayhorn and other officers for use of excessive force against handcuffed inmates, Plaintiff fails to provide any details about these complaints, such as the date of the complaints, the underlying incidents and parties involved, or, critically, whether and how Warden Paramo had knowledge of these complaints. The two Form 22 requests regarding the February 3, 2017 incident are dated as mailed to Warden Paramo after the date of the alleged incident. (*Id*. at 15–16.) Accordingly, these requests do not establish that Warden Paramo had knowledge of the alleged ongoing unconstitutional conduct of his subordinates before the incident occurred.[9]

In sum, Plaintiff's complaint fails to state a claim against Warden Paramo because it does not contain factual allegations that plausibly suggest (1) Warden Paramo's subordinates engaged in unconstitutional conduct, (2) Warden Paramo knew of the unconstitutional conduct prior to the alleged February 3, 2017 incident, and (3) despite this knowledge, he failed to act and acquiesced in that conduct.

///

---

[9] Because the dates of the Form 22 Requests render them irrelevant to this analysis, the Court does not address whether a similar type of notification to Warden Paramo that predated the incident at issue would constitute a plausible factual allegation of Warden Paramo's knowledge of, and deliberate indifference to, alleged unconstitutional conduct by his subordinates.

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Warden Paramo's Motion to Dismiss be **GRANTED**. However, because it is not clear that the complaint's deficiencies cannot be cured by amendment, the Court recommends that Plaintiff's Eighth Amendment claim against Warden Paramo be dismissed **without prejudice and with leave to amend**.

**IT IS ORDERED** that no later than **February 12, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 22, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: January 22, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge